There is one point that would moot the entire question in this case. The Mini-Code does not apply to real estate loans over $2,000 in value. Section 8-8-5, Ala. Code 1975, applies. See my special writing in Ex parte Watley, 708 So.2d 890 (Ala. 1997) (Hooper, C.J., concurring in the result). United Companies Lending Corporation ("UCLC") should not be liable at all under § 5-19-4(g). The market determines when points are excessive. I believe that is why the legislature reduced the maximum amount of the loans subject to Mini-Code treatment from $100,000 to $2,000. The loan to the named plaintiffs in this case was far above $2,000; therefore, the Mini-Code does not apply.
However, the problems in the lead opinion do not end with the misapplication of the Mini-Code. If I were to accept the application of § 5-19-19 to UCLC in this case, I would still dissent. The damages in this case could potentially include the forfeiture of principal the plaintiffs borrowed from UCLC. I question why UCLC should be held to have been aware of the requirement that it not charge more than 5% in points. In UnitedCompanies Lending Corp. v. McGehee, 686 So.2d 1171 (Ala. 1996), this very Court was unable to determine whether United was under such a restriction until it was reviewing the case on rehearing. This Court's first opinion in that case had stated that, based on federal law, United was not bound to that requirement.
The lead opinion has also turned the "impairment of contracts" clause of the constitution on its head. In this case, the plaintiffs made an agreement with UCLC. The constitution should protect that agreement from interference by the civil government. Not in this case. The lead opinion interprets § 95 of the constitution in this way: The statute giving the plaintiffs the right to recover principal and interest from a company that charges more than 5% as points is incorporated into the contract between UCLC and the plaintiffs; any change in the damages that can be awarded to the plaintiffs is an impairment of that contract. Never mind that § 95 mentions nothing about the damages that can be awarded. It reads in part: "There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement. . . ." The change in the damages portion of the particular statute in question does not impair or destroy the remedy of the enforcement of the contract between the plaintiffs and UCLC. The remedy is to refund any excess points charged. The amended statute does not impair that remedy.
Section 5-19-19, as it read before May 20, 1996, established the condition for a plaintiff to recover the principal of a loan: "If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this chapter, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void." Even taking § 5-19-19 as it read before May 20, 1996, how can this Court, which came to the "right" conclusion in McGehee, only after two attempts, conclude that UCLC's act of charging 8% and not refunding the interest is "reckless?" Was this Court's original opinion in McGehee "reckless?" Such decisions truly call for the public's ire against what appears to be hypocrisy on the part of the judiciary. I know of nothing more destructive of justice than to call a party's acting lawfully and legitimately to defend its rights a deliberate disregard for the law and therefore worthy of punishment. UCLC, just like this Court, did not know that the Mini-Code applied the 5% limit to its business. If, at the time UCLC entered into this agreement with the plaintiffs, this Court did not know and had not issued an opinion indicating that a lender such as UCLC could not charge over 5%, how is UCLC to be charged with reckless or intentional conduct?
This discussion leads to the issues presented in BMW of NorthAmerica, Inc. v. Gore, *Page 627 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). One of the three "guideposts" the United States Supreme Court set up in that case for determining a constitutional award of punitive damages was "reprehensibility." Without notice that a particular action could result in liability, a defendant cannot be held liable for engaging in that activity. That is why the trial court in BMW
could not hold the defendant BMW liable for actions it had taken in other states where its conduct was not considered tortious. That analysis also bears on the question of UCLC'S reprehensibility in this case. Because UCLC did not have notice that it was subject to the 5% limit, the reprehensibility element, so necessary for punishing a defendant, is lacking in this case.
The lead opinion justifies the heavy penalty because the penalty is based on a statute. However, in Gore the United States Supreme Court placed no such condition on its analysis of a punitive award. Just because the punishment is imposed by statute does not mean that this Court should not decide how reprehensible, and, therefore, how deserving of punishment UCLC may be in this case. If UCLC had notice that its act of charging 8% would subject it to liability, then I might be inclined to agree that a statutory penalty of this magnitude would be justified. But UCLC did not have notice. The judgment in this case is akin to an ex post facto punishment. The defendant is being punished for conduct that even this State's highest court did not know was punishable with respect to this class of defendants. The similarity to BMW in this respect is striking.
I make these observations because I am concerned about the just application of § 5-19-4. I hope that on remand these comments will be shown to have been academic. The trial judge will supervise the final award of any damages and the appropriateness of the amount of that award.
For these reasons, I dissent.
MADDOX, J., concurs.